**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

**DALE CIMARRON BURWELL II,**

       **Plaintiff,**        **CIVIL ACTION NO. 13-cv-10303**

  **vs.**

                        **DISTRICT JUDGE LAWRENCE P. ZATKOFF**

**COMMISSIONER OF**        **MAGISTRATE JUDGE MONA K. MAJZOUB**
**SOCIAL SECURITY,**

       **Defendant.**
_____/

## REPORT AND RECOMMENDATION

Plaintiff Dale Burwell seeks judicial review of Defendant the Commissioner of Society Security's determination that he is not entitled to social security benefits for his physical and mental impairments under 42 U.S.C. § 405(g). (Docket no. 1.) Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 11) and Defendant's Motion for Summary Judgment (docket no. 13). Plaintiff filed a Response to Defendant's Motion. (Docket no. 14.) The motions have been referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (Docket no. 3.) The Court has reviewed the pleadings, dispenses with a hearing, and issues this report and recommendation pursuant to Eastern district of Michigan Local Rule 7.1(f)(2).

**I.    RECOMMENDATION:**

The undersigned recommends that Plaintiff's Motion for Summary Judgment (docket no. 11) be DENIED and that Defendant's Motion for Summary Judgment (docket no. 13) be GRANTED.

**II.    PROCEDURAL HISTORY:**

Plaintiff filed an application for Disability Insurance Benefits and an application for Supplemental Security Income with protective filing dates of February 25, 2010, alleging that he had been disabled since October 28, 2003, due to "limitations arising from the combined symptoms of Bipolar disorder/Anxiety/Depression/Cyclothymic Disorder; Chronic pain/Fatigue; Migraine Headaches; Diabetes Mellitus; Neuropathy of [the] feet and legs; High blood pressure[;] and Kidney disease/Pancreatitis." (*See* docket no. 11 at 9.) The Social Security Administration denied benefits, and Plaintiff requested a *de novo* hearing, which was held on August 3, 2011, before Administrative Law Judge (ALJ) Rebecca LaRiccia, who subsequently found that Plaintiff was not entitled to benefits because he was capable of performing a significant number of jobs in the national economy. (TR 11-24.) The Appeals Council declined to review the ALJ's decision, and Plaintiff commenced this action for judicial review. The parties then filed their instant Motions.

### III. PLAINTIFF'S TESTIMONY, MEDICAL EVIDENCE, AND VOCATIONAL EXPERT'S TESTIMONY[1]

#### A. Plaintiff's Testimony

Plaintiff was 58 years old at the time of the administrative hearing and 50 years old at the time of alleged onset. (*See* TR 34.) At the time of the hearing, Plaintiff was divorced and lived with his mother. (TR 34.) Plaintiff testified that he had attended college for two years, but he did not have a degree. (TR 34.) Plaintiff further testified that he had worked as a quality inspector, lift truck driver, and "pretty much a jack-of-all-trades," until he was fired in 2003 "for not getting along with employees or [his] supervisor." (TR 35.) He added that he had an "uncontrollable temper,"

---

[1]While Plaintiff allegedly suffers from several physical ailments, his challenge of the ALJ's decision focuses on the ALJ's failure to properly consider the limiting effects of Plaintiff's headaches and his mental disorders. (*See* docket no. 11.) Therefore, the undersigned will focus solely on these issues for purposes of this Report and Recommendation.

which had caused him to lose four or five previous jobs. (TR 35.) He noted that he missed a lot of time at work because he would get so mad that he just "didn't want to go in" the next day. (TR 48.) He also explained that he had concentration problems, which would cause him to forget to finish a project without being reminded by his boss. (TR 48.) Plaintiff told the ALJ that he had not worked since 2003. (TR 35.) When asked whether he could work at a job if he "didn't have to interact with others," Plaintiff testified that he "couldn't answer that truthfully." (TR 42.)

Plaintiff testified that his anger could be "set off at anything." (TR 37.) He gave the ALJ several examples, including fits of road rage and one incident where he attacked his neighbor with a broom and was ultimately charged with felony assault. (TR 37, 38-39.) He explained that his inability to control his anger had resulted in his two divorces, estrangement from his children and grandchildren, and 16 weeks of court-ordered anger-management classes, which he told the ALJ did not help at all. (TR 37-39.) He further explained that his relationship with his family had broken down because he would have screaming fights with his wife and children. (TR 47.) Plaintiff testified that he "[woke] up almost every morning mad at the world," and that he just tried to stay away from people all the time. (TR 40.) But even so, he would "still get seriously mad at stuff" and throw things against the wall or break windows. (TR 40.) Plaintiff told the ALJ that he would even "blow up" at his 78-year-old mother. (TR 40.)

Plaintiff testified that he had some psychological treatment from 1997 through 2001, but he could not afford to continue his treatment. (TR 40.) Plaintiff indicated that his treating physicians had put him on Effexor for depression in 2004, but he was not treated specifically for his anger issues. (TR 41-42.) Plaintiff testified that he started treated with Dr. Ahmed Zubairi in early 2011 and that he was seeing him about every six weeks. (TR 42.) Plaintiff told the ALJ that at the time of the hearing, he was on 16 or 17 medications that did not have any benefit. (TR 38.) Plaintiff

3

testified that his "main objective [at the time of the hearing was] to stay away from people" so that he didn't "blow up" or "get into trouble." (TR 46.) He told the ALJ that he didn't go anywhere, had no friends, and didn't play any sports or golf, both of which he used to love. (TR 46.) He added that he had "lost interest in everything." (TR 46.)

### B. Medical Record

Defendant and the ALJ each set forth a comprehensive summary of Plaintiff's medical record (with regard to this migraines and his mental impairments) from 2004 through 2011. (*See* TR 15-22; docket no. 13 at 7-13.) Plaintiff sets forth a largely similar account, but also includes a statement drawing the Court's attention to medical records from 1997 through 2001, which are not discussed by the ALJ or Defendant,[2] and an excerpt from Dr. Zubairi's review of Plaintiff's medical history. (*See* docket no. 11 at 10-12.) The undersigned, having conducted an independent review of Plaintiffs' medical record, hereby incorporates by reference the medical record as set forth in the ALJ's opinion and as set forth in Defendant's Motion. The Court will incorporate additional comments and citations as necessary throughout this Report and Recommendation.

### C. Vocational Expert's Testimony

The ALJ asked the VE to consider a hypothetical person of Plaintiff's age, education, and past relevant work experience who was capable of performing work at the medium exertional level. (TR 51.) The ALJ added that this individual could "understand, remember, and carry out simple and

---

[2]The 49-page record from Integrated Family Psychiatry, PLLC, shows that Plaintiff was treated from December 1997 through December 2001, but the record is almost entirely illegible with the exception of various blood-test results and some checklists. (*See* TR 281-330.) For example, in December of what appears to be 1997 based on Plaintiff's age at the time of the exam (his age appears to read "44"), Plaintiff presented as a well-groomed man of average size with a cooperative attitude. (*See* TR 287.) The examiner (whose name is illegible) noted that Plaintiff had moderate anxiety, was assertively aggressive, and had mild problems with impulse control. (*See id.*)

detailed, but not complex instructions," and could have "no contact with the general public, and no more than superficial noncollaborative contact with coworkers and supervisors." (TR 51.) The ALJ asked the VE what work such an individual could perform.  The VE testified that such a person could not perform any of Plaintiff's past relevant work but could perform work as a hand packer, an assembler, or a sorter.  (TR 51.)  The VE testified that there were 38,360, 20,770, and 17,750 such jobs (respectively) in the local economy.  (TR 51.)

      The ALJ then asked the VE the following:

> [P]lease assume a person with the same vocational profile.  However, assume that this individual . . . has marked limitations, with marked being described as unable to satisfactorily perform the activity independently, appropriately, effectively, and on a sustained basis in a regular work setting for two hours out of an eight our work day, in these areas, the ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances, sustain an ordinary routine without special supervision, work in coordination with or proximity to others without being distracted by them, interact appropriately with the general public.

(TR 52.)  The ALJ asked the VE whether such limitations would allow for any work.  (TR 52.)  The VE testified that such limitations would be work preclusive.  (TR 52.)

      Plaintiff's attorney asked the VE how much of a day an individual must remain on task to remain employed and how many absences a person could have on a monthly basis.  (TR 53.)  The VE testified that an employee must remain on task at least 85% of the work day and could only miss one and three-fourths days a month without being eliminated from competitive employment.  (TR 53.)

## IV.    ADMINISTRATIVE LAW JUDGE'S DETERMINATION

      The ALJ found that Plaintiff met the insured status requirements of the Act through December 31, 2008, and that he had not engaged in substantial gainful activity since October 28, 2003. (TR 13.)  The ALJ found that Plaintiff suffered from the following severe impairments:

bipolar disorder; intermittent explosive disorder; personality disorder; and medically controlled hypertension and diabetes. (TR 13.) The ALJ further found that Plaintiff's complaints of neuropathy "ha[d] not been formally diagnosed[, so] it [was] a non-medically determinable impairment," and that Plaintiff's migraines, pain, kidney stones, and pancreatitis had not lasted the requisite 12 months necessary for a finding of a severe impairment. (TR 13-14.) The ALJ also found that Plaintiff's impairments did not meet or equal one of the listed impairments. (TR 15.)

The ALJ then determined that Plaintiff had the residual functional capacity to perform medium work, except the Plaintiff could "understand, remember, and carry out simple and detailed, but not complex instructions and should have no contact with the general public and no more than superficial, non-collaborative contact with coworkers and supervisors." (TR 15.) The ALJ found that Plaintiff could perform a significant number of jobs in the national economy, and therefore, he was not disabled from October 28, 2003, through the date of the ALJ's decision. (TR 15-23.)

## V.   LAW AND ANALYSIS

### A.   Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human*

*Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

**B.     Framework for Social Security Determinations**

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1)     Plaintiff was not presently engaged in substantial gainful employment; and

(2)     Plaintiff suffered from a severe impairment; and

(3)     the impairment met or was medically equal to a "listed impairment;" or

(4)     Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work. If not, Plaintiff would be deemed disabled. *See id.* at § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203

F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

### C.     Analysis

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)). Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing. 42 U.S.C. § 405(g). Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration." *Morgan v. Astrue*, 10-207, 2011 WL 2292305, at \*8 (E.D.Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174). Plaintiff argues that this matter should be reversed or, in the alternative, remanded under sentence four because (1) the ALJ erroneously found that Plaintiff's migraine headaches were non-severe; (2) the ALJ failed to fully consider the effects of Plaintiff's mental impairments; and (3) the ALJ erred when she found that Plaintiff's

8

bipolar disorder did not meet or equal one of the listed impairments.[3] (Docket no. 11 at 16-23.)

### 1.   Severity of Plaintiff's Migraine Headaches

Plaintiff argues that the ALJ erred as a matter of law when she found that his headaches were non-severe. (Docket no. 11. at 17-18.) The step-two burden of establishing a "severe" impairment has been characterized as "de minimis." *See Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988); *Murphy v. Sec'y of Health & Human Servs.*, 801 F.2d 182, 185 (6th Cir. 1986). Under the regulations, an impairment is "not severe if it does not significantly limit [a claimant's] physical or mental ability to do basic work activities, [such as] . . . [u]nderstanding, carrying out, and remembering simple instructions, [and][u]se of judgment." 20 C.F.R. §§ 404.1521 and 416.921. An impairment only qualifies as "non-severe" if it "would not affect the claimant's ability to work," regardless of the claimant's age, education, or prior work experience. *Salmi v. Sec'y of Health & Human Srvs.*, 774 F.2d 685, 691-92 (6th Cir. 1985). Only slight abnormalities that minimally affect a claimant's ability to work can be considered non-severe. *Higgs*, 880 F.2d at 862; *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 90 (6th Cir. 1985). Thus, the application of the requirement to establish "severity" is quite "lenient," and generally it is "employed as an administrative convenience to screen out claims that are 'totally groundless' solely from a medical standpoint." *Higgs*, 880 F.2d at 862-63.

The ALJ found that any treatments or limitations resulting from Plaintiff's migraine headaches had not lasted 12 months, and therefore, his migraine headaches were not "severe" under the Act. (TR 14.) Nevertheless, regardless of whether the ALJ should have found Plaintiff's

---

[3]Plaintiff's latter two arguments are inextricably intertwined as the basis for each argument is the ALJ's alleged failure to properly weight Dr. Zubairi's opinions. (Docket no. 11 at 20-29.)

migraines to be a severe impairment, as Defendant notes, it is well established that "once any one impairment is found to be severe, the ALJ must consider both severe and nonsevere impairments in the subsequent steps" and it becomes "legally irrelevant" that other impairments are not considered severe. *McGlothin v. Comm'r*, 299 Fed. Appx. 516, 522 (6th Cir. 2008) (citing *Anthony v. Astrue*, 266 Fed. Appx. 451, 457 (6th Cir. 2008)); *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987). Here, the ALJ found that Plaintiff had several severe impairments and proceeded to the remaining steps of the sequential analysis. Thus, the undersigned finds no reversible error in the ALJ's step two analysis.

### 2. Dr. Zubairi's Opinions and Plaintiff's Mental Impairments

Plaintiff first asserts that the ALJ failed to account for Plaintiff's "moderate to extreme difficulties in maintaining concentration, persistence, and pace." (Docket no. 11 at 22-23.) Second, Plaintiff argues that the ALJ erred in determining that Plaintiff's bipolar disorder did not meet or equal the listed impairments. (*Id.* at 25-29.) In support of both arguments, Plaintiff contends that the ALJ erred when she did not accept the conclusions of Dr. Zubairi. (*Id.* at 22, 25-26.) That is, the ALJ found that Plaintiff had mild difficulties in maintaining concentration, persistence, or pace[4] while Dr. Zubairi found that Plaintiff had marked limitations in the same area. Dr. Zubairi also opined that Plaintiff's mental impairments met the requirements of Section 12.04. (*See* docket no. 11 at 22-29.)

The ALJ must give a treating physician's opinion complete deference if it is supported by

---

[4]As Defendant notes, the ALJ did not account for any "moderate to extreme difficulties in maintaining concentration, persistence or pace," because the ALJ only found that Plaintiff had mild difficulties in this area of functioning. (*See* TR 15.) Thus, the ALJ did not err when she failed to include any resulting limitations in Plaintiff's RFC unless she erred when she afforded less than controlling weight to Dr. Zubairi's opinion.

clinical and laboratory diagnostic evidence and it is not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2). It is equally well settled that the ultimate issue of disability is reserved to the Commissioner and not the treating or examining physician. *Kidd v. Comm'r*, 283 Fed. Appx. 336, 341 (6th Cir. 2008). Thus, when a medical or non-medical source offers an opinion on "an issue reserved to the Commissioner, such as whether the claimant is disabled, the ALJ need not accord that opinion controlling weight." *Id.* (citing *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007)). The opinion of an examining source is generally accorded more weight than is the opinion of a source who did not examine the claimant. 20 C.F.R. § 404.1527(c)(1). The opinion of a state agency medical or psychological consultant is reviewed in the same manner as is the opinion of a nonexamining physician or psychologist. 20 C.F.R. §404.1527(e).

The Commissioner requires its ALJs to "always give good reasons in [their] notice of determination or decision for the weight [they] give [a] treating source's opinion." 20 C.F.R. § 404.1527(c)(2). Those good reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Wilson v. Comm'r*, 378 F.3d 541, 544 (6th Cir. 2004) (citing Social Security Ruling (SSR) 96-2p, 1996 WL 374188, at *5 (1996)). If the opinion of a treating source is not afforded controlling weight, an ALJ must apply certain factors in determining what weight to give the opinion, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source. *Wilson*, 378 F.3d at 544 (citation omitted). Even then, a finding that a treating-source medical opinion is not well supported by medically acceptable clinical

11

and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to controlling weight, not that the opinion should be rejected. Social Security Ruling (SSR) 96-2p, 1996 WL 374188, at *4.

Additionally, the Sixth Circuit has upheld the decision of an ALJ which gave less than controlling weight to a treating physician without specifically analyzing the factors set forth in 20 C.F.R. § 404.1527(c) where the ALJ provided "good reason" for the decision. *See Infantado v. Astrue*, 263 Fed.Appx. 469, 473-74 (6th Cir.2008). There is no per se rule that requires an articulation of each of the six regulatory factors listed in 20 C.F.R. § 404.1527(c)(2)-(6). *Norris v. Comm'r*, No. 11-11974, 2012 WL 3584664, at *5 (E.D. Mich. Aug. 20, 2012) (citing *Tilley v. Comm'r*, 394 Fed. Appx. 216, 222 (6th Cir. 2010)). Moreover, an ALJ's failure to discuss the factors of § 1527(c)(2)-(6) may constitute harmless error (1) if "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it;" (2) "if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion;" or (3) "where the Commissioner has met the goal of [Section 1527(c)]—the provision of the procedural safeguard of reasons—even though she has not complied with the terms of the regulation." *Nelson v. Comm'r*, 195 Fed. Appx. 462, 470 (6th Cir. 2006) (citing *Wilson v. Comm'r*, 378 F.3d 541, 547 (6th Cir. 2004)).

Here, the ALJ considered the record in its entirety, discussed the medical evidence pertaining to Plaintiff's mental impairments, and gave considerable attention to Dr. Zubairi's opinions. (*See* TR 21.) Ultimately, however, the ALJ concluded that Dr. Zubairi's assessment that Plaintiff had "marked loss in his ability to perform activities within a schedule, marked loss in his ability to sustain [an] ordinary routine[ and his] ability to work coordinated with or [in] proximity to others[,] and marked loss in multiple areas of social interaction" were only entitled to "some

weight." (TR 21.) In support of this determination, the ALJ recognized that Dr. Zubairi was Plaintiff's treating physician but concluded that the his limited interaction with Plaintiff hindered his ability to develop the type of detailed, longitudinal understanding of Plaintiff's mental impairments that was contemplated under 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Specifically, the ALJ noted that Plaintiff had only begun treating with Dr. Zubairi in 2011 and that Dr. Zubairi "issued his opinion after only two visits." (TR 21.) Thus, the ALJ found that Dr. Zubairi's opinions could not support a finding of disability dating back to 2003. (TR 21.) Moreover, the ALJ found that Dr. Zubairi's opinions conflicted with other evidence in the record, including Dr. Zubairi's own treatment notes. (TR 21.) The ALJ noted that "Dr. Zubairi's treatment notes reveal normal thought content, fair concentration, [and] normal behavior" and concluded that "such findings . . . are not consistent with Dr. Zubairi's opinion that the claimant is totally and completely disabled." (TR 21.)

Plaintiff draws the Court's attention to medical evidence that does support Dr. Zubairi's opinion and argues that "[t]he entire [record] supports the treating physician's limitations." (Docket no. 11 at 22; docket no. 14 at 4.) But the mere existence of evidence supporting Dr. Zubairi's opinion does not mean that the ALJ erred when she found that Dr. Zubairi's opinion was inconsistent with *other* substantial evidence in the record; that is, the ALJ's decision in this regard is supported by substantial evidence even if substantial evidence also supports the opposite conclusion. The undersigned finds that the ALJ gave good reason for her decision to afford Dr. Zubairi's opinion "some weight" and that her rationale is sufficiently specific to make clear to the Court and Plaintiff the weight she gave to Dr. Zubairi's opinions and the reasons for that weight. Therefore, the undersigned finds that the ALJ did not err when she found that Plaintiff had only mild difficulties in maintaining concentration, persistence, or pace, and when she found that Plaintiff's

mental impairments did not meet or equal the listed impairments.

## VI. CONCLUSION

For the reasons stated herein, Plaintiff's Motion for Summary Judgment (docket no. 11) should be DENIED, and Defendant's Motion for Summary Judgment (docket no. 13) should be GRANTED.

### REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: December __, 2013          s/ Mona K. Majzoub

                    MONA K. MAJZOUB
                    UNITED STATES MAGISTRATE JUDGE

## **PROOF OF SERVICE**

      I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: December __, 2013      s/ Lisa C. Bartlett
                                          Case Manager